HENRY CLEWS *et al.* Appellants, *against* THE BANK OF NEW YORK NATIONAL BANKING ASSOCIATION, Respondent.

(Decided January 5th, 1880.)

A draft was drawn on the defendant (a banking corporation) which was presented to it and certified, and subsequently the defendant was informed by the drawer that the draft (describing it by its number, amount, and name of payee) had been sent by the payee through the mail and had failed to reach its destination, and that a duplicate had been issued by the drawer, and the defendant was requested to stop payment of the draft. Subsequently the draft, which had been altered by increasing the amount and substituting the plaintiffs' name as payees, but which still bore its original number, was offered to the plaintiffs in payment for certain United States bonds, upon which the plaintiffs presented it at the defendant's

office to its paying-teller, and inquired whether the certification was good, to which he answered "yes," and failed to notify the plaintiffs that the draft had been lost by the owner thereof, or that payment had been stopped, or to give them any other information in regard to it. *Held*, that the defendant was estopped as against the plaintiffs from denying that the draft was genuine in all respects, and was liable to them for the amount for which they had taken it.

Where a bank has received notice that a draft drawn on it has been lost, and stoppage of payment thereof is requested, it is bound to give notice of such facts to any person making inquiries of it in regard to a draft drawn by the same person and bearing the same number as the draft of which payment has been stopped ; the name of the drawer and the number affording the bank sufficient means to identify the draft.

The paying-teller of a bank is the proper person of whom to make inquiries in regard to the genuineness of a draft purporting to be drawn on it, and his statements in regard to the same, or his failure to give notice of any facts known to the bank impairing the validity thereof, will bind the bank.

The paying-teller of a bank is bound to assume that when, in the ordinary course of business, a draft drawn on his bank is presented, and inquiries made respecting the certification, the party requesting the information contemplates a business transaction with the instrument in which he will rely upon the information he receives from the paying-teller.

APPEAL by the plaintiffs from an order sustaining a demurrer to the complainant and from the judgment entered thereon.

The complaint alleged substantially as follows : That the plaintiffs were bankers and brokers in New York City, and that the defendant was a corporation organized under the National Banking Act, and having its office in New York City; that on January 6th, 1879, the Commercial National Bank of Chicago drew a draft on the defendant for $254 50, to the order of Wirt Dexter ; that Wirt Dexter indorsed the draft and sent it by mail addressed to Augusta H. D. Godman, at New York City ; that on January 15th, 1879, the draft was presented to the defendant for certification, and was by it certified; that before February 10th, 1879, the Commercial National Bank of Chicago was informed by Wirt Dexter that the draft had not been received by the said Augusta H. D. Godman, and that thereupon that bank wrote to the defendant, stopping payment of the draft, and was informed by the defendant that the draft

had been presented and certified; that on February 10th, 1879, the Commercial National Bank of Chicago wrote to the defendant a letter which was received by it on February 12th, 1879, stating that draft No. 73,436 to the order of Wirt Dexter was indorsed over to Augusta H. D. Godman, and mailed to her, but had not been received; that Mr. Dexter requested a duplicate, and that the defendant would please stop payment on the original which it stated it had certified; that on February 25th, 1879, a person representing himself as E. J. Murphy called at the banking house of the plaintiffs in New York City, and after some negotiations agreed for the purchase from them of certain United States government bonds for the price of $2500, and offered in payment therefor the draft before mentioned, which, after its certification had been altered so as to make it for the sum of $2540, and payable to the order of Henry Clews & Co. (the plaintiffs), but in other respects, including the number, was the same; that before delivering the bonds the plaintiff took the draft to the defendant's office and presented it to the paying-teller, and requested him to inform them whether the certification was good; that the paying-teller examined the draft and replied "yes," and neglected to inform them that said draft, or any draft of said Commercial National Bank, or any draft of said bank bearing said number had been lost, or that payment thereof had been stopped, or that said letters before mentioned had been received from said Commercial National Bank, and neglected to give them any other information whatever; that the plaintiffs, relying upon the answer of the paying-teller, and believing the draft to be good, took it in payment for the bonds to the amount of $2500, and also paid to the person representing himself as E. J. Murphy $33 75 in addition; that the plaintiffs on March 3d, 1879, and again on March 5th, 1879, presented the draft for payment to the defendants, who refused to pay it.

*Abbott Brothers*, for appellants.

*Wheeler H. Peckham*, for respondent.

JOSEPH F. DALY, J.—The order and judgment should be reversed. A liability on the part. of defendant to plaintiffs was created by the neglect of the bank, through its paying-teller, to inform plaintiffs, when the check was presented with an inquiry as to the certification, that payment of the check had been stopped ; and to communicate the other facts within its knowledge affecting the validity of the check.

The ordinary rule as to the liability of a bank upon its certification of a check, and upon declarations of its teller as to such a certification, only apply where the bank has no special knowledge of the history of the instrument and of facts connected with the drawing, delivery, indorsement, validity, &c. (*Marine National Bank* v. *National City Bank*, 59 N. Y. 67.)

Where the bank and its officers are in possession of special knowledge they are under the same obligation as natural persons to disclose it when an omission to do so must result in injury to the person applying to them for any information on the subject, with an evident purpose of acting upon information so obtained. It is urged that the only question put to the paying-teller related to his certification, and that he was not bound to answer, except as to that. Under no view of legal obligation would the drawer of the check be justified in omitting to state that he had stopped payment of his check to a person applying merely to know if his signature were genuine. It is difficult to understand on what ground the drawee (the bank) is excusable in withholding the fact that payment has been stopped because the only information expressly desired related to the certification. As drawee, the bank was not justified in omitting to state the important circumstance that the check *would not be paid*.

If it were the duty of the bank to impart the information that the check had been stopped, the paying-teller was the officer chargeable with such duty when applied to for any information respecting the instrument. He is the officer to whom all checks in the regular course of business are presented for payment, and is the person to whom, in the ordinary course of business, the superior officers of the bank would

and should communicate the intelligence that payment of a check has been stopped for the protection of innocent holders as well as dealers. All persons applying to the paying-teller have the right to rely upon so plain a course of business. If the paying-teller is not informed by the cashier, or other officer, receiving notice to stop payment, there is an omission of a plain duty on the part of those officials. While the person making inquiries of the paying-teller is justified in assuming that the latter must know if the payment is stopped, and in assuming that the bank has no knowledge nor information affecting the validity of the check if nothing is imparted to him on that head, the paying-teller on the other hand, is bound to assume that where a check is presented and inquiries made respecting the certification, in the ordinary course, the party requiring information contemplates a business transaction with the instrument, in which he will treat it as of value, or of no value, according to the information he receives. As paying-teller of the drawee, therefore, the officer is not justified in omitting to state facts in his knowledge affecting the value of the instrument as a genuine check, especially (as before remarked) the fact that it is not to be paid ; and the parties applying have a right to expect that he will state such facts, and also that if payment has been stopped he, as paying-teller, will know it.

The notice which the bank had in its possession when plaintiffs made their inquiries was of a specific fact, viz.: that the draft had not been received by the payee ; that a duplicate had been drawn, and that payment on the original must be stopped. The notice also called the defendant's attention to the fact that it had certified the original draft. The number was specified 73,436, and the draft as raised and altered still bore that number, affording unerring means of identification. It may be that the bank can consistently with ordinary care explain the reason why a draft with this number was suffered by it to be circulated as an instrument which it had no reason to know was not good when payment of that number had been stopped. It will be for a jury to consider the circumstances and to decide.

The fact that the notice from the drawer stated to defendant that the payee of the draft was Augusta H. D. Goodman, and that she had not received it, and their silence upon this point when they must have known that the draft presented had been altered as to the payee, and was not indorsed so as to transfer title, relieves the case from embarrassment on the question of want of title in plaintiffs. With knowledge of all the facts the defendant suffered the plaintiffs to consider and deal with the paper as genuine in all respects, and is estopped from denying it.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.