THE SUSQUEHANNA VALLEY BANK, Appellant, *v.* CHARLES W. LOOMIS, as Executor, etc., Respondent.

A draft, drawn by a New Jersey bank upon a New York bank, which had been altered by some unknown person by changing the date and name of payee, and raising the amount, was presented at plaintiff's banking-house by a stranger, who applied for the money thereon. P., defendant's testator, came to the bank with the stranger and put his name upon the draft "as an indorser." Plaintiff purchased the draft and paid the amount of it to the stranger. The draft was sent by plaintiff to its correspondent in New York, and it was paid by the drawee, but upon discovery of the forgery, the money was refunded. In an action upon the indorsement it was not denied that the person presenting the draft was the payee appearing upon its face at that time, and there was no finding that he was not. *Held,* that as P. was, to the knowledge of plaintiff, simply an accommodation indorser, his indorsement was not a guaranty of the genuineness of the draft; that the fact of the forgery could not be presumed to be within his knowledge; that upon the facts found he had all the rights and privileges of an indorser and was subject only to the obligations that relation imposed; and, as he was not charged according to the law-merchant, *i. e.,* by presentation for payment, refusal and notice of non-payment, he was not liable.

*Merchants' Bk.* v. *Exchange Bk.* (16 La. 459), *White* v. *C. N. Bank* (64 N. Y. 316), *Graves* v. *A. E. Bank* (17 id. 205), *Morgan* v. *Bank of the State of N. Y.* (11 id. 404), *Canal Bank* v. *Bank of Albany* (1 Hill, 287), *Turnbull* v. *Bowyer* (40 N. Y. 456), distinguished.

(Argued March 23, 1881; decided April 26, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made November 26, 1879, reversing a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought to recover the amount of a draft alleged to have been altered and to have been purchased by plaintiff upon the strength of the indorsement thereof by Justice Pickering, defendant's testator.

The material facts are stated in the opinion.

*O. W. Chapman* for appellant. Mr. Pickering, by indorsing the draft, guaranteed its genuineness in all particulars, including the amount of money for which it called. (Story on Promissory Notes, §§ 335, 379, 380, 387; 1 Daniel's Neg. Inst., §§ 669, 1113; *Turnbull* v. *Bowyer*, 40 N. Y. 456, 460; *White* v. *Continental Nat. Bk.*, 64 id. 320.) He was liable to the plaintiff for the amount of the draft, by reason of such guaranty or contract, without any demand of payment and notice of dishonor. (*Goddard* v. *The Mechanics' Bk.*, 4 N. Y. 147, 151; *Turnbull* v. *Bowyer*, 40 id. 459.) Even if Mr. Pickering was entitled to notice of dishonor, it was given in time. (*White* v. *The Continental Nat. Bk.*, 64 N. Y. 316; *Bk. of Commerce* v. *Union Bk.*, 39 id. 230, 237.) Even if the draft had not been properly protested, and if a notice of dishonor were necessary, yet Mr. Pickering, as indorser, knowing all the facts and promising to pay it, is liable in the same manner as though the draft had been protested. (*Richard* v. *Boller*, 51 How. 371.)

*S. C. Millard* for respondent. As the defendant was ignorant of the alleged alteration of the draft at the time of his indorsement, and as he received no portion of the money obtained upon it, and no steps having been taken to charge him as indorser, he was not liable. (*Case* v. *Bradburne*, 1 Daly, 256; *Bk. of Commerce* v. *Union Bk.*, 3 N. Y. 237.) By indorsing the draft defendant became liable, if charged as an indorser, but not otherwise. (Story on Promissory Notes [5th

ed.], § 380.) The defendant by his indorsement at most con-
tracted that the draft upon presentation and demand of pay-
ment of the drawee would be paid, and if not, upon due serv-
ice of protest he would pay it. (Chitty on Bills, 266; Bayley
on Bills [5th ed.], 170 ; *Case* v. *Bradburn*, 1 Daly, 256.) By
indorsing the draft defendant became liable as an indorser,
whether the draft was genuine or not, but he has never been
charged as an indorser and is, therefore, not liable as such. (19
Hun, 230.) This delay in discovering the fictitious character
of the draft was inexcusable, and should be held to discharge
the indorser from all liability. (Story on Bills of Exchange
[2d ed.], § 450.)

DANFORTH, J. The issues were tried by a judge without a
jury, and exceptions to his conclusions of law permit the in-
quiry whether the facts found will support the judgment.

It appears that on the 5th day of June, 1877, the First
National Bank of Plainfield, N. J., made and issued its draft
upon the First National Bank of New York, for $25, payable
to the order of William A. Palmer , but prior to the 12th day
of June, 1877, it was so altered by some unknown person that
when on that day a stranger brought it to plaintiff's banking
house, it bore date the 6th day of June, 1877, instead of the
5th, was for $1,200, instead of $25, payable to the order of
William Brown instead of William A. Palmer, and upon it
was indorsed the name of William Brown. The defendant's
testator was then with the stranger and the latter asked for
money on the draft. The plaintiff purchased it and paid the
money to him. The defendant's signature was then on the draft
as an indorser, but the money was not paid until after the defend-
ant left the bank. From the order in which these events are stated
by the trial judge and the particularity of detail, it may be fairly
inferred that the indorsement by defendant was at the bank
and intermediate the application and the purchase. This in-
ference is strengthened by the fact that such indorsement does
not appear upon the copy-draft set out in words and figures in the
report and representing, as is found, its true condition when

taken to the bank and offered to its cashier. Thus plaintiff's case against Pickering rests solely on the draft and his indorsement, aided by no finding of collateral circumstances. That such existed, we might imply from the allegations in either pleading; but as to them no finding was made, nor, so far as the case shows, was any evidence given in their support. It is found, moreover, that he put his name upon the draft as " an indorser." He is bound then by no other obligation than is implied by law from that relation. It is obvious that he was an accommodation indorser, and it is not pretended that he received any portion of the avails of the draft. What then was his engagement? As indorser it was in general terms to pay the draft to any holder for value whose title was derived through the payee, provided it was duly presented to the drawee, payment refused by it and due notice of non-payment given to him. (*Hall* v. *Newcomb*, 7 Hill, 416; *Spies* v. *Gilmore*, 1 Comst. 321.)

It is clear that the judgment of the Special Term cannot stand upon the performance of any of these conditions. The draft was sent by the plaintiff to its correspondent, The National City Bank, for collection, and after the usual course through the clearing-house, was paid to it by drawee. It is contended by the defendant that the obligation of his testator was thus fulfilled. But, on the other hand, it is urged, " that by indorsing the draft he guaranteed its genuineness in all its particulars, including the amount of money for which it called;" and as the drawee afterward credited back to the Plainfield Bank the money which it had charged and the National Bank repaid the money it received to the drawee, and the plaintiff to the National Bank, that the testator as indorser is bound to pay to the plaintiff the money which it paid the stranger for the draft. It must be conceded that the Plainfield Bank was at least entitled to have refunded to it the difference between the true sum for which the draft was issued and that to which the check had been altered; and in like manner, that the plaintiff would be entitled to recover from the stranger to whom it was paid the same amount of

money (*Hall* v. *Fuller*, 5 B. & C. 750 ; *Merchants' Bank of N. Y.* v. *Exchange Bank of N. O.*, 16 La. 457 ; *Turnbull* v. *Bowyer*, 40 N. Y. 456 ; *White* v. *Cont. Nat. Bk.*, 64 id. 316) ; but it by no means follows that the principle by which this right is upheld applies to this case. *Hall* v. *Fuller* (*supra*), decided in 1826, shows that the fraud here practiced is not of modern invention. The action was assumpsit for money had and received by the defendant (bankers) to the use of the plaintiffs (merchants). It was shown that the plaintiffs' check of £3 upon the defendant had been fraudulently raised to £200 and otherwise altered, and when presented was paid and charged to the plaintiffs. They sued to recover moneys deposited by them, and the bankers sought to retain for the amount so charged. It was contended by the plaintiffs that they were entitled to the whole sum of £200, but the court ruled otherwise, saying "the bankers have paid more than the order authorized them to do, for by that they were authorized to pay no more than £3," and the judgment was limited to the excess. In *Merchants' Bk.* v. *Exchange Bk.* (*supra*), it appeared that The Bank of Mobile drew a draft of $213.50 upon the plaintiffs, which was altered to $5,013.50 and then sold to the defendant, The Exchange Bank of New Orleans, who sent it forward for collection. The plaintiffs paid it and passed the full amount to credit of defendants. When the forgery was discovered the plaintiffs sued to recover the difference between the true sum and that to which the check had been altered, and succeeded. In *White* v. *Continental Nat. Bk.* (*supra*) the defendant, as the holder of the bill, claimed to be entitled to receive the amount thereof from the drawees, and was held to a knowledge of his own title and the genuineness of the indorsements and of every part of the bill, "within," it was said by ALLEN, J., "the general principle which makes every party to a promissory note or bill of exchange a guarantor of the genuineness of every preceding indorsement, and of the genuineness of the instrument;" adding also: "The presentation of the bill and the demand and receipt of money thereon was equivalent to an indorsement. The drawees had

a right to act upon the presumptive ownership of the defendant as the apparent holder." There are other cases to the same effect. In *Graves* v. *American Exchange Bk.* (17 N. Y. 205) the defendant sought to withhold a bill of exchange upon the ground of payment to the payee. The indorsement was a forgery, and it was held did not pass the title or justify its payment. *Morgan* v. *The Bank of the State of New York* (11 N. Y. 404) involved substantially the same question. So in *The Canal Bank* v. *The Bank of Albany* (1 Hill, 287) the defendant had received money upon the strength of a forged indorsement. None of these authorities apply to the case of an accommodation indorser who neither owned nor held the paper or received the money sued for. In the case at bar the plaintiff knew that this was the position of the indorser; knew that he was not the holder of the paper; that he claimed no right to receive the money, and by the fact that the payee presented the bill with the defendant's name thereon as second indorser, was chargeable with notice that the defendant was an accommodation indorser. Nor were the facts upon which the plaintiff now seeks to recover within, or presumed to be within, the knowledge of the defendant and not of the plaintiff.

It remains to consider the case of *Turnbull* v. *Bowyer* (40 N. Y. 456), cited by the appellant. There the names of persons to whom a check was payable were forged, and afterward it was innocently indorsed by the defendant. By his negligence it went into circulation, and reached the hands of one who, in good faith and without notice of the true relation of the indorser to the check, paid value for it, and was permitted to recover it back from him upon the ground that the indorsement was a warranty to every subsequent holder in good faith, that the instrument itself and all the signatures antecedent to such indorsement were genuine. It was decisive of that case that the payee's name was forged, and the remark that the implied warranty applied to the instrument itself was uncalled for by any fact in the case. In support of the proposition reference is also made to Story on Promissory Notes, §§ 135, 379, 380, 387, and cases there referred to, and such is the citation.

by the appellant. But these merely assert a right of action against the indorser on the ground that he cannot complain if called upon to repay money received by him upon an indorsement of a void title, for the author says: "There is a failure of the consideration on which the transfer was made." In Daniels on Neg. Inst., language similar to that of Story is made use of (§ 669), but the cases cited in its support do not meet the facts of this case. They are like those before referred to and only upheld the recovery of money from the person to whom it was paid. (*Jones* v. *Ryde,* 5 Taunt. 486.)

There are no doubt cases in which an indorser is liable without notice of non-payment. *Bickerdike* v. *Bollman* (1 Term Rep. 405) is said by PARKE, B., in *Carter* v. *Flower* (16 M. & W. 743), to have made the first exception to the general law which requires such notice. There the indorser knew the draft was not to be paid; and another is illustrated in *The Mechanics' Bank of N. Y.* v. *Griswold* (7 Wend. 165), where the indorser had all the maker's property. But that any exception should be allowed has been many times regretted, because thereby nice distinctions were introduced into the law, and a plain and intelligible rule departed from. It has however been uniformly held that whoever will avail himself of an exception to the general rule must bring his case within it, either by some recognized authority, or the application of some legal principle. Such exceptions should not be multiplied. *Turnbull* v. *Bowyer* (*supra*) goes no farther than to make an indorser liable upon an implied warranty, that a prior indorsement, purporting to be that of the payee, was genuine; and upon the same principle it has been held that a bank certifying a check in the usual form simply certifies to the genuineness of the signature of the drawer, and that he has funds sufficient to meet it. It does not warrant the genuineness of the body of the check as to payee or amount. This was decided in *The Marine National Bank* v. *The National City Bank* (59 N. Y. 67), where the plaintiff certified a check which had been altered by changing the date, name of payee and raising the amount, and subsequently paid it to the defendant. It

was decided by this court that the money so paid could be recovered back from the defendant who had received it. So the defendant in the case before us might be held responsible for the truth of facts presumed to be within his own knowledge, and for an implied affirmation, that so far as he was connected with it the draft was not defective. It is not denied, however, that the signature of the drawer was genuine, nor that the person presenting the draft, and for whose accommodation Pickering indorsed it, was the payee appearing upon its face at that time. The trial court does not find that the payee's name as indorser was forged it finds no undertaking on the testator's part save that of an indorser; and we concur with the General Term in the opinion that his liability was not established. There is no evidence of any intention to create any liability except as indorser. He had all the rights and privileges of one, was therefore subject only to the obligations which that relation imposed, and as he was not charged according to the law merchant, he cannot be held.

It may be that upon a new trial other facts might be established, but by this appeal the plaintiff has deprived itself of that opportunity; and as the above views lead to an affirmance of the order appealed from, the respondent will, by force of the stipulation which made the appeal possible, be also entitled to judgment absolute.

All concur; Folger, Ch. J., and Earl, J., in result.

Judgment affirmed, and judgment absolute for the defendant.