By the Court.—Sedgwick, Ch. J.
—My opinion is that the judgment appealed from should be reversed.
The plaintiff having deposited money with the defendant, the latter was authorized to pay out on account of plaintiff the amount deposited as ordered by plaintiff’s checks. This relation of the parties involved obligations of the kind that rest upon contract, and it was the contract of the defendant that it would not charge the plaintiff with the amount of a payment made upon a check that was not drawn by plaintiff. Therefore, the inquiry in this case' is, was the amount in controversy, that the defendant charged to plaintiff, paid upon a check drawn by plaintiff.
The plaintiff had drawn an instrument in the form of a check upon the defendant, for $700, and as of the date of April 22, 1882. After giving attention to what, as matter of law, is identity of choses in action, it is clearly seen to be the fact that the instrument referred to was never presented to the bank for payment.
Morgan, who was named as payee in it, changed April 22, on the paper, to April 21. Beyond controversy, this was a material alteration. The effect was that from the time of the alteration the instrument ceased to be the act of the plaintiff and was void against him. When the defendant, after paying the amount written in it to Morgan, charged the sum to the plaintiff, as the payment was not made upon the order of the plaintiff, the charge' was not justified by the contract between the parties.
As a part of the argument of the learned counsel for respondents, it was urged that the defendant was bound to know only the signature upon the check.. The leading case of Hall v. Fuller (5 Barn. & Cress. 750), is that the banker *72 is bound to ascertain that the check is genuine in all respects. Bankers cannot charge checks paid by them that have been forged as to their amounts, or to holders that claim through a forged indorsement of the payee. The principle of this is that, the money was not paid upon the depositor’s order. The instance of a date being changed is not an exception to the rule. When the date is forged, the instrument ceases to be order of the depositor. In this respect checks are like notes and bills. The well-known text of Chitty on Bills (181) is: “ If a bill of exchange or promissory note be altered without the consent of the parties in any material part, as in the date, sum, or time when payable, or consideration, or place of payment, such alteration at common law, and independently of the stamp acts, renders the bill or note wholly invalid, as against any party not consenting to such alteration, and this although it be in the hands of an. innocent holder,” citing the leading case of Marler v. Miller (4 T. R. 320; 1 Smith’s L. C.).
It was also argued that the bank is entitled to charge it against the account of the maker, for the correct amount, and at the true time he made it payable. This implies, as I understand, that the bank had a right to keep the check, as it did in fact, until the day of the true date, and then to charge its amount against plaintiff’s account. This does not appear to me to be correct in principle, or to regard the nature of the transaction.
The check, if unaltered, could not legally be paid out of the funds of the plaintiff, on presentation for such payment before the true day, of April 22 (Godin v. Bank of Commonwealth, 6 Duer, 76). Any one acquiring the check before that day would have, in the implied obligation of the drawing of the check, a «promise of the drawer that the bank would pay upon presentation, on or after the date of April 22. The bank on which it was drawn, that is, the present defendant, would have no further right. If the bank had cashed the check, unaltered, but on April 21, and on that day the whole of the account had been assigned, or paid out, so that the bank had been driven to an action *73 upon the check, of course it would recover judgment. But the chéck being forged as to its date, the answer of the plaintiff, that the check was void as to him, that is, that it was not his check, must have prevailed. The defendant by keeping the forged check one day could not transform the promissory instrument that was invalid to bind the plaintiff to see that the check was paid upon demand, into an instrument valid to justify such a payment upon demand.
Some cases were cited to support the propositions advanced for the respondent. For instance, in Susquehanna Bank v. Loomis (85 N. Y. 207), Danforth, J., says: “It must be conceded that the Plainfield Bank was at least en-entitled to have refunded to it the difference between the true sum. for which the draft was drawn, and that to which the check had been altered. The Plainfield Bank was the drawer of the draft, and the citation says in effect, that it could not be charged by the drawee with the amount of the draft to the extent that it had been increased above the amount which was originally and justly due upon it.” This, it may be here said, is the opposite of asserting that against its depositor the bank is only bound to look to the genuineness of his signature upon the check. The citation may imply, in connection with the further citation of Hall v. Fuller (5 B. & C. 750), that the Plainfield Bank could properly be charged with the genuine amount of the draft before it was feloniously increased. And Hall v. Fuller did so hold. In both cases it was either the fact or was considered to be the fact, that at some time previous to his payment upon the forged instrument, there had been issued by the drawer to the payee a genuine instrument, which would have authorized the payment of the genuine amount by the drawee. Under the circumstances, it was in effect held, that although of course, the genuine instrument was destroyed, nevertheless the obligations and rights under it passed by the transaction. Strictly, of course, the forged, instrument was a nullity as to any obligation upon itself, and could not transfer rights under a genuine instrument. In favor of an innocent party, it might legally be evidence *74 of a circumstance which was relevant to the .rights and devolution of rights under the genuine instrument. When, physically, the forged instrument was the same as the genuine instrument, excepting the alteration of some words or figures, it would be difficult to describe the transaction concisely, unless by referring to the payment of the amount of the genuine instrument as being made upon the forged instrument. Such a description of the facts would not be meant to assert the validity of the forged instrument in any respect. The law justified the payment to the less amount, as made under rights springing from a genuine instrument that had been destroyed, which if not destroyed but presented at the time of the actual payment, would have been effectual against the drawer.
In the present case, at the time of the actual payment, there was no't and never had been in existence a genuine instrument which would have justified any payment out of plaintiff’s credit, with defendant (Godin v. Bank of Commonwealth, supra). The defendant would have bought "a past dated check if it had not been altered. It having been altered, they must abide the consequences appropriate to the fact, that they bought a forged chose in action. If they, should be allowed to charge its amount against the plaintiff, because they had the power of keeping it until the next day, and then using the forgery, instead of treating it as void, they would at least, use a power that belonged solely to the plaintiff as drawer of creating a genuine instrument- to bind him.
It may be argued that, if after altering it, Morgan had presented it on the 22, the defendant would have had a right to charge its amount to plaintiff. The proposition presents on the probable speculation that Morgan would forge, with no object. But, I do not assent to an inference, that the present case is like the hypothesis. 'The fact that it was altered and presented before the day of its true date has significance in favor of the plaintiff. The plain tiff, by making the day of presentation the 22, secured, except as against forgery, that perhaps he might be at home and pre- ^ *75 vent the necessity of Morgan using the check, or that Morgan would not use it until a time when there would exist the strongest probability that the proceeds could not be misapplied. The foreman would be looking for the money on that day, and would arrange with Morgan, when and where to receive it. Tlie testimony of the foreman and his brother in this case, illustrates this. The earlier payment of the check asserted, unintentionally, Morgan’s fraud, and deprived the plaintiff of the benefit of those circumstances that would have tended to prevent Morgan’s attempting to defraud on the 22, of this the defendant took the risk (Cowing v. Altman, 71 N. Y. 442).
In White v. Continental Bank (64 N. Y. 317), the plaintiff was the drawee of a sight draft, its amount was unlawfully increased, and it was then presented to the plaintiff, who accepted it and afterwards paid the increased amount upon it to the defendant. The action was to recover back'the money. When, therefore, the court said that “ the plaintiffs as drawees of the bill, were only held to a knowledge of the signature of their correspondents as drawers ; by accepting and paying the bill, they only vouched for the genuineness of such signatures, and were not held to a knowledge of the want of genuineness of any other part of the instrument, or of any other names appearing thereon, it gave the rule of obligation, between the acceptor, and the person to whom the bill was paid. It does not touch the obligation between the drawee as acceptor and the drawer. The second rule of the case contains something pertinent to that, • and relevant here, when looking upon the defendant as a holder of the check on the 21, seeking to charge it on the 22. If as against the drawer, the drawee was held only to ascertain the genuineness of the signature, there would be no reason why, if the drawee paid, he could not be authorized to charge the drawer, and then, why he should be allowed to recover the amount over again, from the person to whom the acceptance was paid. The same distinction exists in the cases of Marine National Bank v. National City Bank (59 N.Y. 67); National Bank of Commerce v. *76 National Mechanics’ Banking Association of N. Y. (55 N.Y. 211).
I am of opinion, therefore, that the plaintiff should have had judgment on the case as presented, unless it appeared that the plaintiff was guilty of such laches in respect of the forgery, that he should suffer rather than the defendant. The plaintiff so wrote the date of April 33, that the forgery was accomplished by erasing the second figure. The figure 1 that was placed instead, of the erased figure, was not written in a blank space, which a person to whom the check might be presented, would have a right to believe would be filled up by the maker when drawing the instrument, or by his authority afterwards. The circumstances presented to the plaintiff and to the defendant, the same consideration that would apply to the erasure of the amount of a genuine check. The plaintiff gave no facility for the accomplishment of the forgery. The trust he placed in the forger led to the forgery or caused or aided it, in no other sense than that it was one circumstance of the many that must exist to render the crinie possible. It is usual to have employees, and usual to believe that they will not forge. The fact that he made the check to the order of his clerk was an act of prudence rather than of negligence, in respect of the course the check might take in general. But he was not bound to entertain the likelihood of such a forgery as did take place. No one would think of .it as being likely to be perpetrated. The general honesty of men,„and the improbability of dishonesty of the clerk in such a respect, the restraints of conscience, and of the penal laws, would prevent a business man entertaining the idea that such a forgery was probable if it came into his mind casually.
I am therefore of the opinion, that the amount of the check should not have been charged against the plaintiff.
On the findings of the court below, I also think that the plaintiff’s action in taking the custody of the check for the purpose of prosecuting Morgan, did not ratify the alteration or the charge or estop him from bringing this action.
Judgment should be reversed and a new trial ordered, *77 with the costs of the appeal to the appellant to abide the event.
Truax and O’Gorman, JJ., concurred.